1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JULIO CESAR IBANEZ,

11             Plaintiff,                        No. CIV S-06-2668 KJM EFB P

12        vs.

13   M. MILLER, et al.,

14             Defendants.                       FINDINGS AND RECOMMENDATIONS

15   _____/

16        Plaintiff is a state prisoner proceeding without counsel in a civil rights action brought

17   under 42 U.S.C. § 1983.  On July 30, 2010, defendants Patton, Townsend, and Wright moved for

18   summary judgment.  Dckt. No. 68.  An additional defendant, B. Bevan, has not yet been served

19   and is not a party to the motion.  *See* Dckt. No. 85.  For the following reasons, the undersigned

20   recommends that the motion be granted.

21   **I.  Background**

22        The following facts are undisputed unless otherwise noted: On May 24, 2005, while

23   incarcerated at Pelican Bay State Prison ("PBSP"), plaintiff told prison officials that he was

24   concerned for his safety because the Mexican Mafia prison gang had placed a "hit" on him.

25   Dckt. No. 70, Pl.'s Stmt. of Undisputed Facts (hereinafter "Pl.'s SUF"), No. 1; Dckt. No. 68,

26   Defs.' Stmt. of Undisputed facts (hereinafter "Defs.' SUF"), No. 1.  According to plaintiff, he

1

was interviewed by a Sergeant Rice the same day.  Pl.'s SUF 2 & Ex. 1 to Pl.'s Opp'n to Defs.'

Mot. for Summ. J. (hereinafter "Pl.'s Dep.") at 17:8-19:10.  Prison officials placed plaintiff in

administrative segregation for ten months while investigating plaintiff's claim.  Pl.'s SUF 2,5;

Defs.' SUF 2.  According to plaintiff, and not expressly disputed by defendants, a Lieutenant

Miller interviewed him in November 2005 in connection with the investigation, which

Lieutenant Miller conducted.  Dckt. No. 54, Pl.'s Third Am. Compl. (hereinafter "Compl.") at 6,

¶ 14.

         Plaintiff had previously been stabbed while imprisoned at the San Diego County Jail in

2003.  Pl.'s SUF 3; Defs.' SUF 3.  He "think[s]" he told Sergeant Rice of the stabbing during the

May 24, 2005 interview.  Pl.'s Dep. at 25:4 ("I think I did tell Sergeant Rice[.]").  Plaintiff states

in his undisputed facts that he told Lieutenant Miller of the 2003 stabbing "prior to the

conclusion of his investigation," citing to his deposition as support.  Pl.'s SUF 4.  However,

plaintiff testified clearly in his deposition that he did *not* tell Lieutenant Miller of the 2003

stabbing.  Pl.'s Dep. at 24:23-25:11; *see also* Defs.' SUF 4.  None of the documentation of the

investigation into plaintiff's safety concerns mentions the 2003 stabbing.  Pl.'s Opp'n to Defs.'

Mot. for Summ. J., Ex. 5 In Supp. Thereof; Defs.' Mot. for Summ. J., Decl. of Diana Esquivel In

Supp. Thereof (hereinafter "Esquivel Decl."), Ex. A.  After completing his investigation into

plaintiff's safety concerns, Lieutenant Miller found

> no sustainable reason that would justify Ibanez remaining in Administrative
> Segregation.  None of the information provided by Ibanez proved to be correct
> . . . . [A]ll the information that was obtained leads me to believe that Ibanez was
> in good standing with the Southern Mexicans.[1] Based on the information at
> hand, it is my recommendation that Ibanez be returned to ICC and cleared for
> return to General Population.

Pl.'s Opp'n to Defs.' Mot. for Summ. J., Ex. 5 at 6; *see also* Defs.' SUF 6.  Plaintiff appeared

---

[1] According to plaintiff's deposition testimony, "Southern Mexicans" are those inmates
of Mexican heritage who were in a Southern California street gang prior to incarceration.  Pl.'s
Dep. at 25:23-26:6.  Southern Mexicans are subordinate to the Mexican Mafia prison gang.  *Id.*
at 25:15-22.

before PBSP's Institutional Classification Committee ("ICC") on November 30, 2005.  Pl.'s SUF 6; Defs.' SUF 7.  The ICC informed plaintiff of the results of the investigation and expressed concern that he was a "predator" or "sleeper" – an inmate who claims safety concerns in order to be placed in a special needs yard ("SNY") to carry out an assault.  Pl.'s SUF 5-6; Defs.' SUF 8.  The ICC recommended that plaintiff be transferred to another prison.  Pl.'s SUF 7; Defs.' SUF 9.  Plaintiff reiterated to the ICC his desire to be placed in an SNY, but the ICC recommended placement in general population.  Pl.'s SUF 7; Pl.'s Opp'n to Defs.' Mot. for Summ. J., Ex. 5 at 7.  Plaintiff was informed of his right to appeal the ICC's decision but did not do so.  Defs.' SUF 11; Pl.'s Dep. at 28:21-29:3.

Plaintiff was transferred to High Desert State Prison ("HDSP") on March 22, 2006.  Pl.'s SUF 9; Defs.' SUF 12.  At HDSP, defendant Bevan (not a party to the instant motion) assigned plaintiff to a general housing unit.  Pl.'s SUF 10; Defs.' SUF 13.  Defendants Patton, Townsend, and Wright were not involved in that decision.  Defs.' SUF 14; Pl.'s Dep. at 10:12-13:3.  Plaintiff did not appeal defendant Bevan's decision to place him in general population.  Defs.' SUF 14; Pl.'s Dep. at 36:6-9.  Plaintiff claims that indirect threats were made against him by inmates passing in front of his cell between March 22 and March 28, 2005.  Pl.'s SUF 11; Defs.' SUF 16.  Plaintiff did not inform any prison staff of these threats.  Defs.' SUF 12; Pl.'s Dep. at 17.

On March 28, 2005, a Unit Classification Committee ("UCC") meeting was held regarding plaintiff.  Pl.'s SUF 19; Defs.' SUF 18; Esquivel Decl., Ex. C.  The committee was comprised of defendants Wright, Patton, and Townsend.  Pl.'s SUF 13; Defs.' SUF 19.  Plaintiff did not tell the defendants of the 2003 stabbing, his safety concerns, or his desired placement in an SNY.  Pl.'s SUF 17; Defs.' SUF 24-26.  According to the "Classification Chrono" prepared by the UCC on that date, plaintiff "stated he understood committee's actions," was "in agreement with this committee's decision," was aware of his right to appeal the decision, and "was an active participant during the hearing."  Esquivel Decl., Ex. C.  Plaintiff contends,

however, that the "brief and forceful" way in which the meeting was held prevented him from stating his safety concerns.  Pl.'s SUF 17-18.  Defendants declare that they were aware of the concerns plaintiff had expressed at PBSP and the results of the consequent investigation, and plaintiff has not come forward with any evidence or argument disputing defendants' knowledge of the investigation and its results.  Defs.' SUF 22-23; Defs.' Mot. for Summ. J., Decl. of M. Townsend In Supp. Thereof (hereinafter "Townsend Decl.") at ¶ 6; Decl. of M. Wright In Supp. Thereof (hereinafter "Wright Decl.") at ¶¶ 7-10; Decl. of D. Patton In Supp. Thereof (hereinafter "Patton Decl.") at ¶¶ 6-7.  The UCC decided to keep plaintiff in general population.  Pl.'s SUF 19; Defs.' SUF 30.  Ibanez did not appeal the decision or take any other steps to complain about his placement or air his safety concerns.  Defs.' SUF 31; Pl.'s Dep. at 46:2-18.

On April 4, 2006, plaintiff was stabbed by two inmates in the exercise yard.  Pl.'s SUF 21; Defs.' SUF 32.  He was placed in administrative segregation where he remained until an ICC review on April 13, 2006.  Pl.'s SUF 22-23; Defs.' SUF 33.  Defendant Wright was a member of the April 13, 2006 ICC committee, and plaintiff contends that Wright opposed plaintiff's placement in an SNY at the committee's meeting.  Pl.'s SUF 23-24; Defs.' SUF 34.  The ICC decided to place plaintiff in an SNY.  Pl.'s SUF 25; Defs.' SUF 36.

In this lawsuit, plaintiff alleges that defendants violated his rights to due process and to be free from cruel and unusual punishment by being deliberately indifferent to his safety needs.

**II.  Analysis**

    **A.  Summary Judgment Procedure**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

1    242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th

2    Cir. 1994).  At bottom, a summary judgment motion asks "whether the evidence presents a

3    sufficient disagreement to require submission to a jury or whether it is so one-sided that one

4    party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.  "When reasonable

5    minds could differ on the material facts at issue, summary judgment is not appropriate." *Nw.*

6    *Motorcycle Ass'n*, 18 F.3d at 1472.

7          Under summary judgment practice, the moving party

8                 always bears the initial responsibility of informing the district
                  court of the basis for its motion, and identifying those portions of
9                 "the pleadings, depositions, answers to interrogatories, and
                  admissions on file, together with the affidavits, if any," which it
10                believes demonstrate the absence of a genuine issue of material
                  fact.

11

12   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting the prior language of Rule 56(c),

13   which was amended in 2007 to implement purely stylistic changes).  If the moving party meets

14   its initial responsibility, the opposing party must "set out specific facts showing that there is a

15   genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio*

16   *Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must demonstrate – through evidence in

17   the form of affidavits and/or admissible discovery material – a factual dispute that is both

18   material (i.e. it affects the outcome of the claim under the governing law) and genuine (i.e., the

19   evidence is such that a reasonable jury could return a verdict for the nonmoving party).  Fed. R.

20   Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 248-50; *Matsushita*, 475 U.S. at 586 n.11.  Summary

21   judgment should be entered, after adequate time for discovery and upon motion, against a party

22   who fails to make a showing sufficient to establish the existence of an element essential to that

23   party's case, and on which that party will bear the burden of proof at trial.  *See Celotex Corp.*,

24   477 U.S. at 322.  Thus, "a complete failure of proof concerning an essential element of the

25   nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

26   ////

5

In resolving a summary judgment motion, the court examines the pleadings, the discovery and disclosure materials on file, and any affidavits filed by the parties. Fed. R. Civ. P. 56(c)(2). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in his or her favor. *Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Nevertheless, it is the opposing party's obligation to produce a factual predicate from which a favorable inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On May 8, 2008 and June 23, 2010, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 955-60 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999) (holding that either the district court or the moving party must inform a pro se prisoner of the requirements of Rule 56), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

**B. Analysis of Plaintiff's Claims Against Defendants Wright, Patton, and Townsend**

As mentioned above, plaintiff alleges that he was deprived of due process and subjected to cruel and unusual punishment by defendants Wright, Patton, and Townsend, because those individuals decided to keep him in general population at the UCC meeting of March 28, 2006, resulting in the stabbing. Plaintiff further alleges that defendant Wright violated the same constitutional provisions because he advocated against his placement in an SNY at the ICC meeting of April 13, 2006 following the stabbing.

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal

6

1   quotation marks, ellipsis, and citation omitted).  However, "not . . . every injury suffered by one

2   prisoner at the hands of another . . . translates into constitutional liability for prison officials

3   responsible for the victim's safety."  *Id.* at 834.  A prison official may be held liable for an

4   assault suffered by one inmate at the hands of another only where the assaulted inmate can show

5   that the injury is sufficiently serious, *id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298

6   (1991)), and that the prison official was deliberately indifferent to the risk of harm, *id.* at 837.

7   To be deliberately indifferent, the "official must both be aware of facts from which the inference

8   could be drawn that a substantial risk of serious harm exists, and he must also draw the

9   inference."  *Id.*

10          Because the Eighth Amendment provides an explicit textual source of constitutional

11   protection against the harm alleged by plaintiff (prison officials' failure to protect him from harm

12   inflicted by other inmates) and provides at least as much protection as the Due Process Clause,

13   the court analyzes both of plaintiff's claims (due process and Eighth Amendment) under the

14   Eighth Amendment's deliberate indifference standard.  *See Graham v. Connor*, 490 U.S. 386,

15   395 & n.10 (1989); *Redman v. County of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991)

16   (stating that prisoners' liberty interests are protected by the due process clause in addition to the

17   Eight Amendment and that "the state's failure to protect such persons against assaults by other

18   prisoners results in a constitutional violation when that failure constitutes deliberate indifference

19   to their safety.").

20          Here, plaintiff has failed to raise a disputed issue of material fact as to whether

21   defendants Patton, Townsend, and Wright were deliberately indifferent to the risk that plaintiff

22   could be assaulted by another inmate.  As seen from the factual summary above, it is undisputed

23   that these defendants were aware that plaintiff had expressed concern for his safety while at

24   PBSP.  Rather, PBSP officials had concluded after an investigation that this concern was

25   unsubstantiated and that plaintiff was a potential "sleeper," expressing safety concerns to gain

26   SNY placement in order to carry out an assault.  It is also undisputed that plaintiff did not inform

7

these defendants of the 2003 stabbing at the San Diego County Jail and that there was nothing in

the records of the PBSP investigation noting that stabbing.  It is further undisputed that plaintiff

did not appeal the conclusion by PBSP officials that his concerns were not substantiated and that

he was a potential sleeper or their consequent decision to clear him for placement in general

population.  Lastly, it is undisputed that plaintiff did not inform any staff at HDSP of the threats

he alleges were made against him after his arrival at the prison.  With these undisputed facts, no

reasonable factfinder could conclude that defendants Patton, Townsend, and Wright were aware

of facts from which they could infer that plaintiff was exposed to a risk of serious harm.  Rather,

all of the facts known to defendants indicated that plaintiff's safety concerns were unfounded,

and plaintiff did nothing to counter those facts, either at the UCC meeting of March 28, 2006 or

by filing an inmate grievance or otherwise raising his concerns to prison staff.

In addition, based on the undisputed facts and this record, no reasonable factfinder could

conclude that defendants Patton, Townsend, and Wright actually did infer that plaintiff was

exposed to a risk of serious harm.  Rather, the declarations of these defendants show that they

did not make such an inference.  Patton Decl. at ¶¶ 5-14; Townsend Decl. at ¶¶ 5-14; Wright

Decl. at ¶¶ 5-18.  Plaintiff argues that a factfinder could conclude that defendants made the

inference because the risk was obvious from the PBSP investigation.  However, the undisputed

facts show that the risk was not obvious but rather that all evidence before the defendants from

the PBSP investigation indicated that plaintiff's safety concerns were unfounded and that, rather

than being exposed to a risk of harm, plaintiff *presented* a risk of harm if placed in an SNY.

As to plaintiff's claim that defendant Wright violated his constitutional rights by

opposing his placement in an SNY at the ICC meeting of April 13, 2006, even assuming the truth

of all the facts alleged by plaintiff, these facts do not create a triable issue of fact for violation

§ 1983, as none of the facts show that plaintiff suffered any deprivation as a result of defendant

Wright's opposition.  To establish liability under § 1983, plaintiff must prove that the defendant

deprived the plaintiff of a federal constitutional or statutory right and that the defendant did so

under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Here, the undisputed facts show that plaintiff was not deprived of any constitutional or statutory right by Wright's conduct at the April 13, 2006 meeting, but instead that he was retained in Administrative Segregation pending transfer to an SNY.

Thus, plaintiff has failed to raise a triable issue of material fact that defendants Patton, Townsend, or Wright were deliberately indifferent to the risk that he would be attacked by another inmate, and summary judgment should be granted in their favors.

**III. Recommendation**

In accordance with the foregoing analysis, it is hereby RECOMMENDED that the July 30, 2010 motion for summary judgment filed by defendants Patton, Townsend, and Wright be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 3, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

9